**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RACHEL TURCO POLLY,** | : |
| **Plaintiff,** | : |
| v. | : Case No.: 2:23-cv-2015 |
| **UPMC MAGEE-WOMENS HOSPITAL,** | : |
| **Defendant.** | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Rachel Turco Polly, by and through the undersigned counsel, J.P Ward & Associates, LLC, and, specifically, Justin M. Bahorich, Esquire, who hereby files the within Complaint in Civil Action against Defendant, UPMC Magee-Womens Hospital, of which the following is a statement:

## PARTIES

1. Plaintiff, Rachel Turco Polly ("Plaintiff"), is an adult individual who currently resides in Washington County, Pennsylvania.

2. Defendant, UPMC Magee-Womens Hospital ("UPMC"), is a Pennsylvania Nonprofit Corporation located at 300 Halket St., Pittsburgh, PA 15213.

3. At all relevant times, Defendant employed more than 15 employees.

## JURISDICTION AND VENUE

4. Jurisdiction is proper as Plaintiff brings this lawsuit under the Americans with Disabilities Act ("ADA" – 42 U.S.C §§ 12101, *et seq.*).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred at a business located within this district.

6. On July 26, 2023, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's Charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

7. On or about August 23, 2023, Plaintiff received a Notice of Right to Suit from the EEOC.

8. Plaintiff has exhausted all administrative remedies under the ADA and the PHRA.

### FACTUAL ALLEGATIONS

9. Plaintiff began working for Respondent on October 25, 2021 as a Registered Nurse.

10. Defendant gave Plaintiff a $15,000.00 sign-on bonus for applying to the surgery unit due to demand. Plaintiff paid taxes on the bonus.

11. Plaintiff disclosed to her employer that she had rheumatoid arthritis and auto-immune issues.

12. Plaintiff initially worked for the Day Surgery Unit, which was physically intensive.

13. Throughout her first month or so, Plaintiff began to experience auto-immune symptoms such as weak thigh and arm muscles, joint inflammation in her fingers and shoulders, and cognitive issues.

14. On or about November-December 2021, Plaintiff's supervisor, Danielle Wineberg, spoke with her regarding the issues she was experiencing. Plaintiff stated that she had back, ankle, and knee braces, but was still feeling a lot of pain. She stated that she was trying to work through the pain.

1

15. Eventually, Ms. Wineberg met with Plaintiff and recommended transferring her into another position, such as case manager.

16. Plaintiff stated that she wanted to try and work through it instead.

17. Ms. Wineberg and Plaintiff had a third talk where Ms. Wineberg stated that she could talk to a recruiter and get her transferred into another position.

18. In February 2022, Plaintiff was told by the Charge Nurse that she had to take four patients. Plaintiff responded that she thought she could only handle three.

19. Due to this conversation, Ms. Wineberg stated that Defendant was not going to place Plaintiff into a case management position anymore. She then threatened to fire Plaintiff if she did not resign. Ms. Wineberg also claimed that if Plaintiff did not resign, she could never work for UPMC again.

20. Due to the threat of blacklisting, Plaintiff felt coerced to resign.

21. On February 3, 2023, Plaintiff received a notice from Credit Management Company that they were attempting to collect the $15,000 bonus sign-on fee that Respondent awarded to Ms. Turco Polly before it coerced her to resign.

22. Upon information and belief, Defendant attempted to claw back the bonus after it constructively discharged Plaintiff.

**COUNT I**
**DISABILITY DISCRIMINATION**
**IN VIOLATION OF THE ADA AND PHRA**

23. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

24. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) he is disabled within the meaning of the ADA, (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) he has

2

suffered an otherwise adverse employment decision as a result of discrimination. *McGlone v. Philadelphia Gas Works*, 733 Fed. Appx. 606, 609-10 (3d Cir. 2018) (*Citing Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

25. Under the ADA, an individual has a disability if she: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1).

26. Under the ADA, major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, working, and the operation of major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. 42 U.S.C. § 42102(2).

27. UPMC constitutes an "employer" within the meaning of the ADA and PHRA.

28. Plaintiff was an "employee" and qualified individual with a disability within the meaning of the ADA and PHRA during her employment with Defendant.

29. Plaintiff has a physical or mental impairment that substantially limits one or more major life activities. She was also regarded as having rheumatoid arthritis and auto-immune issues.

30. Plaintiff was otherwise qualified to perform the essential job duties for her position, with or without reasonable accommodation.

31. During her employment with Defendant, Plaintiff promised to accommodate Plaintiff's disability by transferring her into another position. Instead of doing so, Defendant forced Plaintiff into resigning by threatening termination of her employment and blacklisting.

32. Defendant constructively discharged Plaintiff stating that it would no longer accommodate Plaintiff due to her expressing that she was only comfortable handling three (3) patients instead of four (4), but would instead give her the choice to either quit or get blacklisted from working at any UPMC facility in the future.

33. Upon information and belief, Defendant knew that Plaintiff had a disability yet terminated her for attempting to work through it. Ultimately, although it promised to accommodate Plaintiff in another position, Defendant did not do so and instead terminated Plaintiff's position with discriminatory intent.

34. Thereafter, on or about February 3, 2023, Defendant decided to claw back its bonus even though Defendant was the cause of Plaintiff's discriminatory termination.

35. Defendant's actions were the proximate and legal cause of Ms. Plaintiff's injuries, harm, and damages.

36. Defendant's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Plaintiff.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees, and any further relief it deems just and proper.

## COUNT II
## RETALIATION IN VIOLATION OF THE ADA AND PHRA

37. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

38. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) a protected employee activity, (2) an adverse action by the employer either after or

contemporaneous with the employee's protected activity, and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 731, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49-50 (3d Cir. 2017).

39. The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

40. "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 307 (3d Cir.2012) (*Citing LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3rd Cir. 2007)).

41. Defendant was an "employer" under the ADA and PHRA.

42. Plaintiff was an "employee" and qualified individual with a disability under the ADA and PHRA.

43. Plaintiff engaged in a protected activity by requesting reasonable accommodations, and informing her employer of her disabilities and the symptoms arising out of her disabilities. After Plaintiff engaged in the protected activities, Defendant terminated her employment.

44. Subsequently, on or about February 3, 2023, Defendant engaged in another adverse action by falsely claiming a debt against Plaintiff.

45. Thereafter, on or about February 3, 2023, Defendant sent a debt collection agency after Plaintiff for the $15,000 sign-on bonus it previously awarded her. However, the only reason Plaintiff stopped working for Defendant was due to Defendant's discriminatory actions.

46. Upon information and belief, Defendant's actions negatively affected Plaintiff's credit score.

47. Upon information and belief, Defendant's attempted claw back of the bonus is discriminatory because it was the sole cause of Plaintiff's job termination, and because it terminated her job due to her disabilities. This is the context relied upon to claim that Plaintiff owed this money.

48. Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

49. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees, and any further relief it deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully Submitted,

**J.P. WARD AND ASSOCIATES, LLC**

Date: November 21, 2023

By: _____
Justin M. Bahorich (Pa. I.D. No. 329207)

J.P. Ward and Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

*Counsel for Plaintiff*